UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FREEDOM WIRELESS, INC.,

Plaintiff,

v.

BOSTON COMMUNICATIONS GROUP,
INC. and NEXTEL COMMUNICATIONS,
INC.,

Defendants.

CIVIL ACTION No. 05-11061-EFH

## OPPOSITION OF FREEDOM WIRELESS, INC. TO DEFENDANT BOSTON COMMUNICATIONS GROUP, INC.'S MOTION FOR A STAY OF PROCEEDINGS PENDING RESOLUTION OF THE FEDERAL CIRCUIT APPEALS

### INTRODUCTION

On May 20, 2005, after a fifty-one day trial, the jury returned a verdict on the issues of

validity, infringement and damages (Nos. 1786, 1787, 1788, 1789) in *Freedom Wireless, Inc. v.*

*Boston Communications Group, Inc., et al.* (D. Mass.) (Civil Action No. 00-12234-EFH) ("C.A.

No. 00-12234"), and, on September 1, 2005, after an eleven-day bench trial, this Court issued

comprehensive Findings of Fact and Conclusions of Law (No. 1870) concluding that defendants

in C.A. No. 00-12234 had not proven that the patents-in-suit ('067 and '823) were obtained by

inequitable conduct. Also on September 1, 2005, Judgment (No. 1871) was entered in

accordance with the jury verdict awarding Freedom Wireless, Inc. ("Freedom Wireless") One

Hundred Twenty-Eight Million Dollars ($128,000,000)[1] and this Court's Findings of Fact and

---

[1]    By Order of Award of Prejudgment Interest (October 12, 2005) (No. 1929), this Court awarded Freedom
Wireless approximately Twenty Million Dollars ($20,000,000) in prejudgment interest.  This Court also
entered an Order for Award of Costs that day (No. 1928) awarding Freedom Wireless $323,584.96.  On

Conclusions of Law.

On October 20, 2005, after disposition of several post-trial motions, including this Court's Order for Permanent Injunctive Relief Pursuant to 35 U.S.C. § 283 ("Injunction Order")[2] (No. 1943) and Order (No. 1949) denying the Renewed Motion for Judgment as a Matter of Law or for a New Trial filed by Boston Communications Group, Inc. ("BCGI"), BCGI filed its Notice of Appeal in C.A. No. 00-12234 (No. 1958) to the United States Court of Appeals for the Federal Circuit.

In the Federal Circuit, on November 14, 2005, BCGI filed the Emergency Motion of Boston Communications Group, Inc. to Construe or Stay the District Court's Injunction ("Emergency Motion") (Exhibit A). In its Emergency Motion, BCGI argued that the Federal Circuit should construe the Injunction Order "not to apply to" Nextel Communications, Inc. ("Nextel").

BCGI has now filed a Motion for a Stay of Proceedings Pending Resolution of the Federal Circuit Appeals ("Motion for Stay") in this case,[3] but it has not articulated the rule, much less made any effort to satisfy the rule, that governs the granting of such extraordinary relief. Moreover, it is telling that, depending on whether its audience is this Court or the Federal Circuit, BCGI sings a very different tune. Its inconsistent arguments of convenience reveal their weaknesses.

---

November 16, 2005, this Court entered an Order (No. 1997) enhancing the award of damages to Freedom Wireless by $1.9 Million.

[2] Among other things, the Injunction Order prohibits Boston Communications Group, Inc. and the other defendants in C.A. No. 00-12234 from acting in concert with any third party to "make, use, sell, or offer to sell" any of the three prepaid wireless service implementations found to infringe Freedom Wireless's patents.

[3] There are only two defendants in this case, BCGI and Nextel. BCGI has filed the same Motion for Stay in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.* (D. Mass.) (Civil Action No. 05-11062-EFH) ("C.A. No. 05-11062"). Defendants in C.A. No. 05-11062 are BCGI and twenty-two prepaid wireless carriers. Nextel is not a party in that case. A separate opposition to the Motion for Stay will be filed in C.A. No. 05-11062.

The Motion for Stay should be denied and this case should proceed on a normal schedule.

## ARGUMENT

### I. BCGI Has Not Satisfied the Governing Rule to Obtain a Stay.

The Supreme Court articulated the rule that governs here in *Landis v. North American Co.*, 299 U.S. 248, 255 (1936):

> [T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.[4]

This rule has been routinely followed. *See, e.g., C.F.T.C. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1483-87 (10th Cir. 1983) (reversing stay order as abuse of discretion); *Dellinger v. Mitchell*, 442 F.2d 782, 786-88 (D.C. Cir. 1971) (stay order invalid); *Amersham Int'l v. Corning Glass Works*, 108 F.R.D. 71, 71-72 (D. Mass. 1985) ("[T]o be entitled to a stay, a party must demonstrate a clear case of hardship if there is a danger that the stay will damage the other party.") (quotations and citations omitted).[5]

### A. BCGI Will Suffer No Hardship Or Inequity If This Case Proceeds On A Normal Schedule.

BCGI has failed to "make out a clear case of hardship or inequity in being required to go forward." In fact, BCGI has made out no case of hardship. The only "hardship" BCGI mentions is

---

[4]   BCGI quotes *Landis* for the basic proposition that every court has the power to control the disposition of cases on its docket, Motion for Stay at 4-5, but fails to point out the governing rule.

[5]   The two opinions cited by BCGI to support its argument that this Court "has the discretion to stay proceedings in a patent-infringement action . . . pending the outcome of an appeal in another case," Motion for Stay at 4, are not on point. *In re Intertape Polymer Corp.*, 121 Fed. Appx. 386 (Fed. Cir. Dec. 2, 2004) (unpublished), is not citable as precedent. *See* Fed. Cir. R. 47.6. In that case, the Federal Circuit (in a 2-1 decision) denied a petition for a writ of mandamus to direct a district court to vacate its stay of proceedings because "[t]his case, involving the district court's management of its own docket, clearly does not warrant the extraordinary remedy of mandamus." *Id.* at 387. The Federal Circuit, in *Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir 1983), dismissed an appeal from an order staying proceedings for lack of jurisdiction. Analogizing the appeal of the stay order to a mandamus petition, the Court found no exception to the Court's jurisdictional statute which limits appeals to final decisions. *Id.* at 1341-42; *see* 28 U.S.C. § 1295.

3

the expense of discovery, Motion for Stay at 7-8, but that "hardship" is inherent in litigation and

certainly does not justify a stay. *See Dow Chemical Co. v. Composite Container Corp.*, 223

U.S.P.Q. 685, 686. (D. Mass. 1984) (not reported in F.Supp.). BCGI does not even suggest that it

will suffer any inequity if the case proceeds.

BCGI also intimates that judicial economy is a reason to grant a stay in this case. Motion

for Stay at 7 ("potentially unnecessary and significant waste of the Court's . . . time and

resources"). However, judicial economy "should rarely if ever lead to such broad curtailment of

the access to the courts." *C.F.T.C.*, 713 F.2d at 1485. BCGI's judicial economy argument is

premised solely on the *possibility* that the Federal Circuit *may* overturn the jury verdict or vacate

this Court's Orders. That premise is baseless.

BCGI identifies three "important issues" that the Federal Circuit will decide in the appeals

in C.A. No. 00-12234 that "may well dispose of" this case: (1) "the Court's claim construction";

(2) "the jury verdict on infringement, validity, and damages"; and (3) "the Court's decision that

the patents-in-suit were not procured by inequitable conduct." Motion for Stay at 3.

First, the jury verdict on validity, infringement and damages is very unlikely to be

overturned because of the great deference that it will be accorded by the Federal Circuit. A patent

is "presumed valid," 35 U.S.C. § 282, and patent invalidity must be established by clear and

convincing evidence. *Robotic Vision Sys., Inc. v. View Engineering, Inc.*, 189 F.3d 1370, 1377

(Fed. Cir. 1999). The jury in C.A. No. 00-12234 found that BCGI and defendant prepaid wireless

carriers did not carry their heavy evidentiary burden. *See, e.g., Tennant v. Peoria & P.U. Ry. Co.*,

321 U.S. 29, 35 (1944) ("Courts are not free to reweigh the evidence and set aside the jury verdict

merely because the jury could have drawn different inferences or conclusions or because judges

feel that other results are more reasonable.").

Infringement is also a question of fact for the jury. *See, e.g., Teleflex, Inc. v. Ficosa NA Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 1993 WL 217173, *3 (Fed. Cir. 1993) (unpublished) ("[I]t is not our function as an appellate court to substitute our judgment for that of the jury and determine for ourselves whether we would have concluded that the product infringes the claims, but rather whether there is sufficient evidence to support a jury verdict on the issue."); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985) (willful infringement question of fact for jury). And the measurement of patent damages is a question of fact also assigned to the jury. *See, e.g., Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001). There is little chance that the Federal Circuit will disturb the jury's verdict on validity, infringement or damages.

Nor is this Court's conclusion that the patents-in-suit were not procured by inequitable conduct likely to be disturbed by the Federal Circuit. "To establish unenforceability based on inequitable conduct the challenger must prove, by clear and convincing evidence, that material information was intentionally withheld for the purpose of misleading or deceiving the patent examiner." *Allied Colloids, Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1578 (Fed. Cir. 1995). This Court issued comprehensive Findings of Fact and Conclusions of Law (fifty-two pages) after an eleven-day bench trial on defendants' claims of inequitable conduct. This Court's detailed Findings of Fact will not be set aside unless they are clearly erroneous, *see* Fed. R. Civ. P. 52(a), and its ultimate finding of no inequitable conduct will be reviewed only for an abuse of discretion. *See, e.g., Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1378 (Fed. Cir. 2005) ("A finding of inequitable conduct is committed to the trial judge's discretion and is reviewed under an abuse of discretion standard."). Enforceability rulings are further insulated from

appellate review where, as here, this Court supported its findings with numerous observations

regarding witness credibility. *See* Fed. R. Civ. P. 52(a) ("due regard shall be given to the

opportunity of the trial court to judge of the credibility of the witnesses."); *see also, e.g.,*

Findings of Fact and Conclusions of Law at 9 ("The Court found Mr. Mrose's [Freedom

Wireless's patent attorney] testimony to be extremely credible."); 16 ("the Court finds that Mr.

Silvey's [defendants' witness] deposition was not credible."); 35 ("During trial, the Court found

the testimony of Mr. von Hellens [Freedom Wireless's predecessor's patent attorney] and Mr.

Mrose to be extremely credible."); 35 n.1 ("[T]he Court did not find credible the opinions of

Professor Wicker. Indeed, Professor Wicker was the Defendants' main expert on infringement

and invalidity during the jury trial, and the jury, in reaching its verdict, disregarded his

testimony.").

        As to the third "important issue" cited by BCGI, although the Federal Circuit will review

this Court's patent claim constructions *de novo, see, e.g., Key Pharms. v. Hercon Labs. Corp.,*

161 F.3d 709, 713 (Fed. Cir. 1998), the Federal Court "exercise[s] . . . independent review"

against the backdrop of generally thoughtful district court Orders. *See* April 23, 2003

Memorandum and Order (No. 736) and Order (No. 737). As the *Key* Court pointed out: "we do

not start from scratch; rather we begin with and carefully consider the trial court's work." *Id.*

        It is noteworthy that the jury found that BCGI and defendant prepaid wireless carriers

have jointly infringed thirty-two claims of the patents. The verdict will stand if the jury's

findings on validity, infringement and damages on only one of those claims are upheld. *E.g.,*

*Collegenet, Inc. v. ApplyYourself, Inc.,* 418 F.3d 1225, 1236 (Fed. Cir. 2005) ("[I]nfringement of

even a single claim entitles a patentee to damages. Therefore, even if the district court had

concluded that the infringement verdicts on [certain] claims were against the clear weight of the

evidence, the damages awarded on the . . . patent would still stand."); *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1220 (Fed. Cir. 1995) ("A patent is infringed if any claim is infringed, . . ., for each claim is a separate statement of the patented invention.") (citations omitted).

In sum, the odds that "[t]he Federal Circuit's decision on these important issues may well dispose of" this case are very low indeed. To paraphrase Judge Keeton in *Dow Chemical*:

> [BCGI] can give the court no assurances or even convincing arguments that a stay will achieve the ends of judicial economy which would be its [justification]. This proceeding will be affected only if [Freedom Wireless] loses in [the Federal Circuit]. It has already been successful . . . [and with the jury and this Court]. At this point, the chance that [Freedom Wireless] will lose in [the Federal Circuit] is merely speculation . . . .

223 U.S.P.Q. at 686.

Magistrate Judge Alexander held similarly in *Amersham*. Defendant sought to stay plaintiff's patent infringement suit pending final disposition of an interference proceeding brought by defendant in the PTO. Defendant contended that the "interference proceeding encompass[ed] the heart of the infringement claim" and might lead to the invalidation of the patent and render the suit moot. 108 F.R.D. at 72. Defendant asserted that "it would be duplicitous, expensive, and an unnecessary waste of judicial resources to continue" the litigation while the PTO proceedings were pending. *Id.* The Court rejected defendant's arguments, finding that "[d]espite these considerations, defendant has failed to overcome the heavy burden required to sustain a stay motion." *Id.* (footnote omitted).[6]

---

[6]     If judicial economy were a factor, it would weigh heavily against a stay in this case. This case is now assigned to this Court because it is obviously related to C.A. No. 00-12234. This Court has construed the claims of the patents-in-suit and is intimately familiar with the central facts and law that will determine this case, having presided over a fifty-one day jury trial and having conducted an eleven-day bench trial based on infringement of those patents. If this case is stayed until the Federal Circuit resolves the appeals in C.A. No. 00-12234, twelve, eighteen, twenty-four months from now, this case may be re-assigned to another district court judge who will be required to start anew. It would be a far more efficient use of judicial resources to allow this case

In sum, BCGI will suffer no cognizable hardship or inequity if this case proceeds on a normal schedule.

**B.    Freedom Wireless Will Be Damaged If This Case Is Stayed.**

As this Court observed in *King Instrument Corp. v. Perego*, 737 F.Supp. 1227, 1241 (D. Mass. 1990):

> Any infringement tends to dampen the fires of creativity so necessary to the vitality of society, economic and otherwise. The law is the protector of the inventor's delicate genius and nourishes its growth and development.

In C.A. No. 00-12234, the jury returned a special verdict finding that Freedom Wireless's patents-in-suit ('067 and '823) are valid and that BCGI and defendant prepaid wireless carriers have jointly infringed all thirty-two claims of the patents. Indeed, the jury found that BCGI willfully infringed the patents. *See* Verdict-I, Verdict-II, Verdict-III, Verdict-IV (Nos. 1786 at 7, 1787 at 7, 1788 at 7, 1789 at 7). The infringement verdicts, as a matter of law, establish irreparable harm to Freedom Wireless caused by those defendants. "In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement." *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989) (citation omitted). *See also Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 106 F. Supp. 2d 696, 701 (D.N.J. 2000) ("Without a doubt, a 'clear showing' of validity and infringement is satisfied where those issues have been tried and the fact-finder has determined that the patent in question was infringed and is not invalid.")

And, although Nextel was not a party in C.A. No. 00-12234, it is clear that it is engaging in the same infringing activities with BCGI as are the prepaid wireless carriers in the earlier-filed case. Nextel has admitted that it has been offering prepaid wireless services since it contracted

---

to proceed normally under the management and direction of the judge currently assigned to it, who lived with C.A. No. 00-12234 for over five years.

with BCGI in August 2002 "to implement its prepaid services." Nextel Communications, Inc.'s

and Nextel Operations, Inc.'s Memorandum in Support of its Motion to Intervene for Limited

Purpose ("Nextel Memorandum") (No. 1952) (Declaration of Phillip Cooke ("Cooke Dec.") (No.

1953) at 2, ¶¶ 5, 6). "Nextel uses BCGI's services for all of the prepaid phone calls made by its

prepaid wireless customers in the United States." Cooke Dec. 2, ¶ 6. Nextel has also

acknowledged that: "Nextel has a direct interest in the subject matter of [C.A. No. 00-12234]

and resulting injunction: BCGI's ability to provide its services to Nextel." Nextel Memorandum

at 7. Moreover, BCGI has no doubt that the Injunction Order in C.A. No. 00-12234 affects

Nextel. *See, e.g.,* Defendant Boston Communications' Opposition to Plaintiff's Motion for

Injunctive Relief (No. 1920) at 5 ("injunction would cover the activities of the very same non-

defendant carrier customers, such as Nextel Communications, Inc."). Nextel has not and cannot

contend that it is not using one of the three prepaid wireless service implementations found to

infringe Freedom Wireless's patents.

In sum, there can be little doubt that BCGI and Nextel are infringing Freedom Wireless's

'067 and '823 patents and that Freedom Wireless is being irreparably damaged by BCGI's and

Nextel's infringing activities. Unless the Injunction Order in C.A. No. 00-12234 prohibits the

infringing activities of BCGI and Nextel, a stay of these proceedings would enable that

irreparable damage to continue unabated for a protracted period of time.[7]

Freedom Wireless would suffer additional damages if the infringing activities of BCGI

and Nextel are not enjoined and a stay is granted in this case. Freedom Wireless has entered into

patent licenses with Verizon Wireless, Convergys Corporation and Telcordia Technologies, Inc.

---

[7]    As indicated *supra* at 2, BCGI has asked the Federal Circuit to interpret the Injunction Order "not to apply to"
Nextel. If the Injunction Order is so limited, Freedom Wireless will move in this case to enjoin the infringing
activities of BCGI and Nextel.

These three companies compete with BCGI in the prepaid wireless services market. If this case is stayed, BCGI would continue to infringe the patents using Freedom Wireless's technology to compete royalty-free against Freedom Wireless's licensees. The authorized licensees would remain at a competitive disadvantage to BCGI simply because they paid to obtain valid licenses rather than infringe the patents cost-free. Thus, Freedom Wireless would continue to be unable to license its patents for fair market value because of the unfair competition from BCGI's continuing infringing activities.

A stay of this case would also encourage potential licensees to infringe Freedom Wireless's patents because Freedom Wireless would be perceived as being unable to enforce its patent rights. *See, e.g., Boehringer Ingelheim Vetmedica*, 106 F. Supp. 2d at 703 ("[I]f an injunction does not issue at this time, Boehringer's reputation will be injured as it will be perceived as a company which is unable to enforce the exclusivity of its patent rights despite having proven liability and validity. . . . [O]ther would-be infringers will no doubt be invited to infringe . . .").

Grant of a stay would harm Freedom Wireless in yet another way. If BCGI's dire predictions of imminent financial doom are to be believed, BCGI may succeed in never having to pay Freedom Wireless the damages caused by its infringing activities with Nextel. *See* discussion *infra* at 14-16.

Freedom Wireless would also be harmed by the sheer delay in waiting for the Federal Circuit to decide the appeals. As BCGI argued to this Court: "It is likely, given the complexity of the appeal issues, the presence of multiple defendants, and the copendency of Freedom's appeal, that the appeal herein easily could take 18 months or longer to resolve." Emergency Motion to Clarify or Stay Permanent Injunction Pending Appeal (No. 1961) at 19. The Federal

Circuit recently issued its decision in one patent infringement case, *Invitrogen Corp., Inc. v. Clontech Labs, Inc.*, ___ F.3d ___, 2005 WL 3078495 (Fed. Cir. Nov. 18, 2005), that was docketed twenty-five months earlier on October 23, 2003. Suffice it to say, if BCGI is granted the stay it requests, Freedom Wireless would be forced to wait years to vindicate its patent rights. Freedom Wireless "is in the clear danger of being damaged by untoward delay." *Amersham* 108 F.R.D. at 72.

Here, there is much more than "a fair possibility that the stay for which [BCGI] prays will work damage to" Freedom Wireless. It will cause continuing irreparable damage, as well as damages caused by unfair competition, perceived inability to enforce its patent rights, the risk that BCGI will become judgment-proof, and protracted delay.[8]

## II.    BCGI Sings A Different Tune Depending On Its Audience.

To this Court, BCGI now argues that this case should be stayed pending the outcome of the Federal Circuit appeals in C.A. No. 00-12234. However, to the Federal Circuit, BCGI argues that the Injunction Order in C.A. No. 00-12234 should be stayed, if it prohibits the infringing

---

[8]    BCGI argues that "a stay is particularly desirable where, as here, an appeal in another action will present key issues that bear directly on – and may well dictate the outcome of – the action in which the stay is sought." Motion for Stay at 5. But the opinions cited and quoted by BCGI, *id.* at 5-7, are either legally inapposite or clearly distinguishable.

For example, two opinions do not apply the governing *Landis* rule and arose in different procedural contexts. *Arco Polymers, Inc. v. Studiengesellschaft Kohle*, 710 F.2d 798, 798 (Fed. Cir. 1983) (suspending appellate proceedings where parties agreed to be bound by Federal Court's ruling in related appeal on patent validity); *Stormwater Mgmnt., Inc. v. CDS Techs., Inc.*, 2005 WL 743073, *2-3 (D. Or. 2005) (ordering parties to submit comments on whether to grant stay but not ruling on issue). The court cited *Landis* in *Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*, 341 F. Supp. 2d 639, 642-43 (N.D. Tex. 2004), but granted a stay requested by *plaintiff*, the alleged infringer seeking to invalidate the patent-in-suit, based on the Fifth Circuit's "first to file" rule embracing principles of comity between federal district courts.

In *Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*, 2005 WL 912184, *3 (S.D.N.Y. 2005), the alleged infringer no longer manufactured the accused products and therefore there was no continuing harm to the patentee or to the public interest. The facts are totally different here. *In re Literary Works in Electronic Databases Copyright Litigation*, 58 U.S.P.Q. 2d 1317, 1318-19 (S.D.N.Y. 2001), presented a unique set of facts. In that multidistrict litigation involving three class actions, all defendants and all but one plaintiff asked the court to stay proceedings pending an imminent decision by the Supreme Court which all agreed would "significantly impact the course and scope" of the litigation. *Id.* at 1318. Again, the facts in this case are very different.

activities of BCGI and Nextel, because this case is proceeding against Nextel. BCGI sings a

different tune depending on its audience. BCGI should not be allowed to eat its cake (restrict the

scope of the Injunction Order so that the infringing activities of BCGI and Nextel can continue)

and have it too (stay this case so Freedom Wireless cannot seek to enjoin those illegal activities

in this case).

In its November 14, 2005 Emergency Motion to the Federal Circuit, BCGI argued that

the scope of the Injunction Order should be limited to prohibit the combined infringing activities

of only BCGI and the four defendant prepaid wireless carries in C.A. No. 00-12234, and should

not reach non-defendant carriers such as Nextel.

> [W]hether the patents are jointly infringed by BCGI and other, *non-defendant*
> carriers – whose activities are now at issue in *other* cases that Freedom filed –
> is beyond the scope of this case [C.A. No. 00-12234]. *Id.* at 2 (emphasis
> original).

BCGI repeatedly emphasized the pendency of this case throughout its Emergency Motion

as a reason to limit or stay the Injunction Order.

> [T]he non-defendant carriers' conduct was not part of this case [C.A. No. 00-
> 12234] and . . . Freedom would have to *file separate actions* to "pursue claims
> arising from conduct involving non-defendant carriers" . . . , *which Freedom
> has now done* . . . *Id.* at 11 (attaching as exhibits Complaints in this case and
> C.A. No. 05-11062) (exhibit citations omitted) (emphasis added).

> Freedom insists the injunction against BCGI's use of its service bureau for
> non-defendant carriers . . . cover[s] the activities of non-parties, *including
> those that are currently the subject of separate, pending litigations* where the
> issues of infringement, validity, and enforceability are contested. *Id.* at 12
> (emphasis added).

> In this context, therefore, *separate lawsuits (which are now underway)* are
> required to determine whether the joint conduct of other carriers and BCGI
> infringes, and that conduct cannot be enjoined. *Id.* at 13 (emphasis added).

> Freedom has in fact filed *separate lawsuits* against other carriers, including [would
> be] intervenor *Nextel*, which deals with this issue [enjoining joint conduct of BCGI
> and non-defendant prepaid wireless carriers] in more detail in its brief. *Id.* at 13 n.3
> (emphasis added).

BCGI's November 28, 2005 Reply Brief in Support of Emergency Motion of Boston
Communications Group, Inc. to Construe or Stay the District Court's Injunction (Exhibit B)
at 2-3 (record citations and footnote omitted) (emphasis added) relied even more heavily on
the pendency of this case in an effort to convince the Federal Circuit to carve Nextel out of
the Injunction Order :

> [Freedom] treats as a foregone conclusion that the combined activities of
> BCGI and Nextel jointly infringe its patents . . . *BCGI's and Nextel's
> activities,* however, *are the subject of a separate litigation* – as are BCGI's
> and Alltel's activities. *Accordingly, the district court's injunction should not
> be construed so that it would effectively short-circuit the judicial process in
> those cases.*

Freedom Wireless is not attempting to "short-circuit the judicial process"; it wants this
case to proceed in due course. Rather, it is BCGI that is attempting to turn the judicial process
"off" by staying this case while simultaneously seeking to limit or stay the Injunction Order by
arguing that this Court abused its discretion in issuing that Order. BCGI's inconsistent
arguments before this Court and the Federal Circuit expose their weaknesses. Either BCGI
should withdraw its attempts to limit or stay the Injunction Order in the Federal Circuit or
withdraw its Motion for Stay in this case. It can't have it both ways.

Nextel has taken its cue from BCGI. In the Federal Circuit, Nextel filed a Motion to
Intervene for Limited Purpose and a Motion to Stay Pending Appeal. Like BCGI, Nextel
highlighted the pendency of this action to support both Motions. *See, e.g.,* Motion to Intervene
for Limited Purpose (November 14, 2005) (Exhibit C) at 2 ("Freedom's claims of joint
infringement involving BCGI and Nextel . . . have become the subject of a separate lawsuit
brought by Freedom . . ."); 9 (Freedom Wireless has "file[d] a separate action against BCGI and
Nextel . . . . Nextel had every reason to believe that its rights would be determined in that action,
. . ." (citing this case) (record citations omitted) (emphasis original)); Motion to Stay Injunction

Pending Appeal (November 14, 2005) (Exhibit D) at 5 ("Plaintiff had *not* joined Nextel in [C.A. No. 00-12234], even though Nextel had entered into contracts with BCGI for prepaid wireless services that Freedom, in a follow-on lawsuit against Nextel, has since claimed to be analogous to those provided to the named defendants." (citing this case) (footnotes omitted)); 5-6 ("[T]he court below . . . instructed Freedom that it would have to make [joint infringement] allegations [against non-defendant prepaid wireless carriers] in follow-on suits (which Freedom has since done in the Nextel litigation).")); 6 ("As directed by the district court, Freedom filed two separate follow-on actions.") (citing this case and C.A. No. 05-11062); 14 ("[I]t is Freedom's desire for such findings – that BCGI's and Nextel's actions combined to create another 'joint infringement' – that explains Freedom's decision to bring a separate lawsuit against Nextel . . ."); 15 ("Here, Nextel's day in court with respect to Freedom's claims against it should be yet to come . . . Freedom was required to present its claims asserting 'joint infringement' by BCGI and Nextel in a separate suit.  Freedom filed such a suit; Nextel is prepared to defend that suit.  It has not done so as of yet."); Reply in Support of Motion to Intervene for Limited Purpose (November 28, 2005) (Exhibit E) at 3 ("Freedom [filed] a separate action against BCGI and Nextel . . . Nextel properly expected issues concerning its combined actions with BCGI to be judged in that action, . . ." (record citations omitted); Reply in Support of Motion to Stay Injunction Pending Appeal (November 28, 2005) (Exhibit F) at 2 ("[T]he question whether the BCGI and Nextel's combined actions . . . also infringed was simply not at issue in [C.A. No. 00-12234].  Those questions were being determined in separate cases, in which the parties whose actions were at issue had actually been named as defendants and were thus given an opportunity to defend themselves.")

While Nextel protests that it is "prepared to defend" this case, its surrogate BCGI is seeking to stop it. Like BCGI, Nextel should choose either to drop its efforts to limit or stay the Injunction Order, or oppose BCGI's attempts to stay this case.

BCGI's Motion for Stay was filed in this Court on November 23, 2005. Before and after that date, both BCGI and Nextel made several filings in the Federal Circuit. Even if BCGI and Nextel decided to advance mutually inconsistent arguments regarding the scope of the Injunction Order and the desire for this case to proceed on a normal schedule, a modicum of candor should have convinced them to inform this Court and the Federal Circuit what relief they were seeking from the other tribunal. This would have enabled both Courts to make fully informed decisions on BCGI's pending motions.

## III.    If A Stay Is Granted, BCGI Should Be Required To Post A Bond.

At least as early as August 17, 2005, BCGI proclaimed that the $128 Million jury damages award in C.A. No. 00-12234 would "put [BCGI] out of business." Defendants' Memorandum in Support of Their Motion for Remittitur or, in the Alternative, Motion for A New Trial with Respect to Damages (No. 1861) at 2. After this Court denied that Motion, BCGI reiterated in its Memorandum in Support of Defendants' Motion for Reconsideration and for Oral Argument (No. 1873) at 1, that the success of the Motion for Reconsideration was "critical to the survival" of BCGI. BCGI continued this theme in its Opposition to Plaintiff's Motion for Injunctive Relief (No. 1920) at 8 (harm injunction would cause is "severe, and may be irreparable"), 9 & n.6 (BCGI *cannot survive as a going concern* if a broad injunction is issued, and would be forced to file for bankruptcy") (emphasis original).

In the Federal Circuit, BCGI has repeatedly threatened that, if the Injunction Order is not limited or stayed, BCGI would file bankruptcy before the Federal Circuit decided the appeals. Emergency Motion of Boston Communications Group, Inc. to Construe or Stay the District

Court's Injunction (Exhibit A) at 4, 17-19; *see also id.* at 17-18 (BCGI is "in an extremely tenuous financial position"); 18 ("BCGI *cannot survive as a going concern*") (emphasis original); 19 (BCGI's "economic situation is perilous"). Most recently, in the Federal Circuit, BCGI repeated that, without relief, BCGI would not survive the appeals and that, because non-defendant prepaid wireless carriers are finding alternative suppliers, "BCGI's continued existence may be seriously jeopardized." Reply Brief in Support of Emergency Motion to Construe or Stay the District Court's Injunction (Exhibit B) at 1, 10; Letter to Honorable Jan Horbaly, Clerk of Court, U.S. Court of Appeals for the Federal Circuit (Exhibit G).

Thus, by its own admissions, if the Federal Circuit does not limit or stay the Injunction Order, BCGI will be insolvent and declare bankruptcy while, if BCGI has its way, this case would be stayed. This would be a classic case of "justice delayed is justice denied." Viewed in the light of BCGI's repeated forecasts of imminent financial doom, the instant Motion for Stay is, in reality, a request that this Court delay these proceedings until BCGI becomes judgment-proof and can avoid paying damages to Freedom Wireless for its infringing activities with Nextel.

Therefore, if this Court considers staying this case, any stay should be expressly conditioned on the posting of an adequate bond by BCGI and/or Nextel, or some other type of adequate prejudgment security, that will enable Freedom Wireless to collect the damages it is awarded in this case. *Zebrowski v. Hanna,* 973 F.2d 1001, 1004 (1st Cir. 1992) ("A court has inherent power to regulate the litigation before it in order to preserve money likely to be the subject of the final judgment.") (citations omitted).

The amount of the bond can be calculated by employing the same methodology that was used to determine the amount of the supersedeas bond in C.A. No. 00-12234. In this case,

Freedom Wireless will be entitled to recover damages from BCGI and Nextel for a period beginning in August 2002 when Nextel initially contracted with BCGI to provide prepaid wireless services.  Cooke Dec. at 2, ¶¶ 5, 6.  BCGI and Nextel should be directed to file and serve a certification that lists for each month the number of minutes used by Nextel prepaid wireless customers from August 2002 through December 31, 2005.  The amount of the initial bond should be calculated by multiplying the aggregate number of minutes by the reasonable royalty rate found by the jury in C.A. No. 00-12234, 2.5¢ per minute.  As long as this case is stayed, BCGI and Nextel should be required to periodically certify (*e.g.*, quarterly) the number of minutes used by Nextel prepaid wireless customers and be required to post supplemental bonds to secure the payment of damages to Freedom Wireless.

If this case is stayed, and BCGI and Nextel are not required to post bonds, or provide some other type of adequate prejudgment security, Freedom Wireless may not be compensated for BCGI's and Nextel's continuing infringement of Freedom Wireless's patents-in-suit.  Any stay, therefore, should be expressly conditioned on BCGI and Nextel providing such security to Freedom Wireless.

## CONCLUSION

The Motion for Stay should be denied.  This case should proceed on a normal schedule. If any stay is granted, this Court should expressly condition it on BCGI and/or Nextel providing adequate prejudgment security.

Respectfully submitted,

FREEDOM WIRELESS, INC.
By their attorneys

  /s/John Kenneth Felter
Paul F. Ware, Jr. (BBO # 516240)
John Kenneth Felter (BBO # 162540)
Douglas C. Doskocil (BBO # 558949)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109-2881
Tel:  (617) 570-1000
Fax:  (617) 523-1231

Dated:  December 7, 2005

LIBA/1653466.2